IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA HALL,

        Plaintiff,

                                Case No. 2:16-cv-01102

      v.                          CHIEF JUDGE EDMUND A. SARGUS JR.

                                Magistrate Judge Kimberly A. Jolson

CENTRAL OHIO ELDERY
CARE, LLC, et al.,

        Defendants.

## ORDER AND OPINION

This matter is before the Court on Plaintiff 's Motion to Dismiss Defendants' Counterclaim. (ECF No. 10.) For the reasons that follow, the Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

Plaintiff Angela Hall initiated this action against Defendants Central Ohio Elderly Care, LLC ("COEC"), Central Ohio Elderly Care Plus, LLC ("COEC Plus") and Osman Hassan (collectively "Defendants"), alleging claims for retaliation in violation of the Fair Labor Standards Act ("FLSA), 29 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111. (Complaint ("Compl.") ¶ 1, ECF No. 1.)

Defendants COEC and COEC Plus operate a home care staffing agency of direct care workers for the elderly and/or disabled who are in need of in home assistance. (*Id.* ¶ 6–7.) Defendant Hassan is the Chief Executive Officer of COEC and COEC Plus. (*Id.* ¶ 9.) Plaintiff Hall began working for Defendants on or around November 5, 2013 as a full-time officer manager and as a part-time in home direct support professional, caregiver, or home health aide.

(*Id.* ¶ 22.) Plaintiff's responsibilities as officer manager included overseeing the compensation of the home health aides and ensuring that Defendants properly paid the aides. (*Id.* ¶ 23.)

Plaintiff alleges that effective October 13, 2015, Defendants' home health aides became hourly, non-exempt employees as defined by the FLSA and OMFSWA. (*Id.* ¶ 24.) After this change took effect, Plaintiff alleges that she discovered that many of the home health aides were regularly working more than forty hours per week but were not being paid time-and-a-half their regular rates for overtime worked. (*Id.* ¶ 25.) Plaintiff alleges that Defendants either failed to pay overtime to the aides altogether or otherwise paid them a reduced rate for their overtime work. (*Id.* ¶ 28–29.) Plaintiff allegedly complained numerous times to Defendants about their payment practices but was ignored. On May 25, 2016, Plaintiff reported Defendants' payment practices to the United States Department of Labor, Wage and Hour Division. (*Id.* ¶ 30.) The Department of Labor subsequently initiated an investigation.

Plaintiff alleges that after reporting Defendants to the Department of Labor, Defendant Hassan called her into a meeting at which he berated her and "began yelling at Plaintiff because she had called the 'labor board' on him." (*Id.* ¶ 37.) According to Plaintiff, Hassan stated to her "You are not to call anyone on me . . . it's against the law for you to call them on me" and "if you keep running your mouth you will be fired." (*Id.* ¶ 38.) On June 2, 2016, Defendant Hassan fired Plaintiff. (*Id.* ¶ 43.)

Plaintiff initiated this suit on November 16, 2016, alleging that she was fired in retaliation for reporting Defendants' unlawful pay practices to the Department of Labor. Defendants filed an Answer to Plaintiff's Complaint on January 17, 2017 and also asserted two counterclaims against Plaintiff for breach of contract and tortious interference. (Answer and Counterclaim ("Countercl.") at 6–7, ECF No. 6.) Defendants allege that Plaintiff signed a

Confidentiality/Conflict of Interest Statement that Plaintiff as a condition of her employment with Defendants on her first day of employment. (*Id.* ¶ 4.) According to Defendants, at the same time she was still employed by Defendants, Plaintiff entered into an employment relationship with a competing company in violation of the Confidentiality/Conflict of Interest Statement. (*Id.* ¶ 5.)

## II.    STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). However, for a pleading to be adequate, it must offer more than simple "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Further, a complaint is insufficient if it only offers assertions without any "further factual enhancements[s]" to support the claim. *Id.* at 557. When considering the plausibility of the complaint, the court must presume all factual allegations in the complaint to be true, and the complaint must be viewed through a lens most favorable to the non-moving party. *Martin v. Insight Communications Company*, No. 2:10-cv-00537, 2011 WL 1233401, at *4 (S.D. Ohio Jan. 26, 2011) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). This however, does not mean that the court must "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

3

### III. ANALYSIS

#### A. Breach of the Confidentiality/Conflict of Interest Statement

To establish a claim for breach of contract under Ohio law, a party must prove four elements: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

Defendants allege that Hall signed a Confidentiality/Conflict of Interest Statement as a condition of her employment when she began working for Defendants on November 5, 2013. (Confidentiality/Conflict of Interest Statement ("Conf. Statement") at Ex. 1 to Countercl., ECF No. 6-1.) The one-page Confidentiality/Conflict of Interest Statement provides as follows:

> I understand and agree to refrain from unauthorized disclosure or use of confidential information from all patients. This includes any information concerning patients, another employee, or agency operations. I recognize that the unauthorized release of confidential information nay [sic] subject me to a civil action under provision of federal and/or state law and may result in the termination of employment.
>
> I acknowledge, by means of this statement, that I am not involved in any transaction, investment, or other legal or personal relationship in which I would profit directly or indirectly as a result of my position. I agree to disclose to the Office any actual, apparent, or potential conflicts of interest that may arise in the future. I agree to abide by the determination of such matters made by the Agency Management.
>
> I agree to hold harmless and indemnify the agency for any damages or costs associated with the defense of any claim arising out of any conflict of interest created knowingly or unwittingly on my part.

(Conf. Statement.) The statement contains the signature of both the Plaintiff and a "witness signature" of the Defendants. (*Id.*) Thus, to the extent that Plaintiff argues the statement is not a contract, Defendants have sufficiently pleaded that the statement was an agreement between Plaintiff and Defendants supported by consideration. Defendants allege that Plaintiff violated the terms of this statement by "entering into an employment agreement with Nina's Home Health

Care (a competitor of COEC and COECP) prior to June 2, 2016," by "soliciting home health care customers/patients to transfer their care to Nina's Home Health Care before and after June 2, 2016," and by "removing and retaining confidential records of COEC and COECP relating to employees and customers/patients." (Countercl. ¶ 5.)

Plaintiff argues that Defendants are attempting to improperly convert the Confidentiality Statement into a non-competition and non-solicitation agreement. (Plaintiff's Motion to Dismiss ("Pl. Mot. to Dismiss") at 5, ECF No. 10.) Plaintiff further argues that, on its face, the statement does not prohibit Plaintiff from entering into new employment or soliciting customers to transfer their care. She argues instead that the statement simply recorded her acknowledgement that she had no conflicts of interest whereby she would profit from her employment and that she would disclose any future conflicts in they arose.

The Court agrees that any interpretation of the Confidentiality/Conflict of Interest Statement as the equivalent of a non-compete and non-solicitation agreement is overly broad. However, the statement does specifically provide that "I agree to disclose to the Office any actual, apparent, or potential conflicts of interest that may arise in the future." Accepting Defendants' allegations as true, it is plausible that Plaintiff would be in violation of the confidentiality statement if she began working at a competing company while she still worked for Defendants, assuming such work posed an "apparent" or "potential" conflict of interest, which she failed to disclose. Therefore at this stage, Defendants have sufficiently stated a claim for breach of contract based on the alleged failure of Plaintiff to disclose potential conflicts of interest. Plaintiff's motion to dismiss Defendants' counterclaim for breach of contract is **DENIED**.

### B. Tortious Interference

Under Ohio law, to state a claim for tortious interference with business relationships, a

plaintiff must show (1) the existence of a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 756 (S.D. Ohio 2013).

Defendants incorporating the same facts alleged in the breach of contract claim for their tortious interference claim, and simply add that "Before and after June 2, 2016, Plaintiff, without a privilege to do so, did solicit, induce or otherwise purposely cause customers/patients and aides of COEC and/or COECP to not enter into, or continue a business relationship with, COEC and/or COECP." (Countercl. ¶ 8.) Defendants allege that "[a]s a result of Plaintiff's tortious interference, Defendants have suffered damages and incurred costs." (*Id.* ¶ 9.)

Plaintiff argues that the single paragraph upon which Defendants base their claim for tortious interference should be dismissed because it fails to allege sufficient facts to state a claim for relief. The Court agrees and finds that Defendants' allegations are devoid of "further factual enhancements[s]" to support their claim for tortious interference. *Twombly*, 550 U.S. at 557. Defendants' counterclaim states no more than "a formulaic recitation of a cause of action's elements." *Id.* at 545. They do not point to any particular customers or patients with whom Plaintiff interfered that would provide Plaintiff with "sufficient notice . . . of the nature of the [Defendants'] claims." *Gross v. Nationwide Credit, Inc.*, 2011 WL 379167, at *3 (S.D. Ohio 2011). Unlike the breach of contract claim, which sufficiently alleged that Plaintiff failed to disclose her work at a particular competitor in violation of specific contractual language, the tortious interference claim here requires more. Plaintiff here has no notice as to any particular relationships with which she interfered.

In response, Defendants maintain that their tortious interference claim is properly

6

pleaded, and in support cites *O'Brien v. Univ. Cmty. Tenants Union*, 327 N.E.2d 753, 755 (Ohio 1975) (syllabus) for the proposition that before a Court may dismiss the complaint, "it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery." (Defendants' Memorandum in Opposition to Pl. Mot. to Dismiss ("Defs. Mem. in Opp.") at 3–4, ECF No. 11.) However, Plaintiff notes that this standard predates *Iqbal* and *Twombly*, and that courts have since instructed parties to no longer rely upon it. *See Gross v. Nationwide Credit, Inc.*, No. 1:10-CV-00738, 2011 WL 379167, at *3 (S.D. Ohio Feb. 2, 2011) ("This is simply no longer the proper standard, and Plaintiff would be well-advised to stop citing it to the courts."). The Court agrees that Defendants have failed to provide a sufficient factual basis to meet their pleading standard with respect to this claim. Plaintiff's motion to dismiss Defendants' counterclaim for tortious interference is therefore **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss Defendants' Counterclaim (ECF No. 10) is **GRANTED in part** with respect to Defendants' claim for tortious interference and is **DENIED in part** with respect to Defendants' claim for breach of contract.

**IT IS SO ORDERED.**

9-21-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**